<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **JOHN FUMICH,** *et al.*, *individually and on behalf of all others similarly situated*, | |
| Plaintiffs, | Civil Action No. 24-9158 (ZNQ) (JBD) |
| v. | **OPINION** |
| **NOVO NORDISK INC.,** *et al.*, | |
| Defendants. | |

<u>QURAISHI, District Judge</u>

**THIS MATTER** comes before the Court upon a Motion to Dismiss filed by Defendants

Novo Nordisk Inc. ("Novo Nordisk"), the Board of Directors of Novo Nordisk Inc. (the "Board"),

and the Novo Nordisk Inc. Retirement Committee (the "Retirement Committee") (collectively

"Defendants"). ("Motion," ECF No. 22.) Defendants filed a Moving Brief in support of the

Motion. ("Moving Br.," ECF No. 22-1.) Plaintiffs John Fumich, Laura Mischley, Raphael Hinton,

Ronnie McLean, and Thomas Chaffin, individually and on behalf of a proposed class (collectively

"Plaintiffs") filed a Brief in Opposition. ("Opp'n Br.," ECF No. 25.) Defendants filed a Reply

Brief. ("Reply Br.," ECF No. 29.) The parties also submitted letters containing supplemental

authorities in support of their arguments. (ECF Nos. 30, 31, 32, 33.) The Court has carefully

considered the parties' submissions and decides the Motion without oral argument pursuant to

Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1.[1]  For the reasons set forth below, the Court will **GRANT** the Motion.

I.      <u>BACKGROUND AND PROCEDURAL HISTORY</u>[2]

        A.      **PROCEDURAL HISTORY**

Plaintiffs filed their class action[3] Complaint on September 13, 2024 pursuant to Sections 409 and 502 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1109 and 1132, against the fiduciaries of Novo Nordisk Inc.'s 401(k) Savings Plan (the "Plan," ECF No. 29-2).[4]  ("Compl.," ECF No. 1, ¶ 1.)  During the class period, the Plan was alleged to have at least $1.2 billion in assets under management.  (*Id.* ¶ 5.)  As a result, as one of "the largest plans in the United States," the Plan had "substantial bargaining power to obtain the most cost-efficient investments."  (*Id.* ¶ 6.)  However, Plaintiffs allege that Defendants "did not exercise appropriate judgment in scrutinizing each investment option, initially and on an ongoing basis." (*Id.*)  Plaintiffs allege that Defendants breached their fiduciary duties owed to the Plan and Plaintiffs by "failing to objectively and adequately review the Plan's investment portfolio . . . to ensure that each investment was prudent."  (*Id.* ¶ 7.)  Plaintiffs also allege that Defendants failed to control the Plan's Recordkeeping and Administrative ("RKA") costs and failed "to defray reasonable expenses of administering the Plan," by using Plan participant funds to reduce company contributions instead of using the funds to reduce amounts charged to participants.  (*Id.* ¶¶ 8, 9.)

---

[1] Hereinafter, all references to "Rule" or "Rules" refer to the Federal Rules of Civil Procedure unless otherwise noted.
[2] For the purpose of considering this Motion, the Court accepts all factual allegations in the Complaint as true.  *See Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).
[3] The putative class includes "All persons, except Defendants and their immediate family members, who were participants in or beneficiaries of the Plan, at any time between September 13, 2018 through the date of judgment." (Compl. ¶ 42.)
[4] The Court can consider the Plan, which is attached to Defendants' Reply Brief, because it is "integral to or explicitly relied upon in the complaint." *Doe v. Princeton Univ.*, 30 F.4th 335, 342 (3d Cir. 2022).

Plaintiffs assert claims for breach of the fiduciary duty of prudence (Count One), breach of the fiduciary duty of loyalty (Count Two), breach of ERISA's Anti-Inurement Provision (Count Three), and failure to monitor fiduciaries (Count Four). On January 24, 2025, Defendants filed the instant Motion.[5]

## B.    FACTUAL BACKGROUND

### 1.    Overview of the Plan

The Plan is a "defined contribution" plan covering all eligible employees of Novo Nordisk, including Plaintiffs. (*Id.* ¶ 49.) The Plan provides for "individual accounts for each participants and for benefits based solely upon the amount contributed to those accounts." (*Id.*) Plan participants can contribute to their accounts via pre-tax contributions, Roth 401(k) contributions, after-tax contributions, and rollover contributions. (*Id.* ¶¶ 53, 54.) Novo Nordisk also matches the contributions of its employees. (*Id.* ¶ 57.) Plan participants can have different accounts depending on the type of contribution that they make. (*Id.* ¶ 63.)

The Plan's total assets under management for all funds as of December 31, 2023 was $2,303,296,181. (*Id.* ¶ 72.) Under the Plan, several investment options were available to participants each year. (*Id.* ¶ 15.) Since 2018, the assets included the Schwab Managed Retirement Target Date Funds in the V and VI share classes (the "Schwab Funds[6]"). (*Id.* ¶ 16.) The Schwab Funds are tax-exempt collective investment trusts ("CIT"), as opposed to mutual funds. (*Id.* ¶ 18.)

### 2.    Allegations Pertaining to Mismanagement and the Failure to Monitor

Plaintiffs allege that despite not having meeting minutes or actual knowledge of Defendants' decision-making process with respect to the Plan, reasonable inferences can be drawn

---

[5] Defendants do not seek to dismiss Plaintiffs' claim for breach of fiduciary duty by permitting the Plan to pay excess recordkeeping fees and the related claim for breach of their duty to monitor other fiduciaries. (Moving Br. at 1 n.1; Reply Br. 15.) Accordingly, these portions of Count One and Count Four will be permitted to proceed.
[6] The target date for the Schwab Funds refers to the date individuals in the Plan intend to retire. (*Id.* ¶ 17.)

to demonstrate Defendants' mismanagement of the Plan. (*Id.* ¶¶ 75–81.) At the start of the Class Period, the Plan held more than $268 million in the Schwab Funds. (*Id.* ¶ 94.) That number grew to $538 million in 2023. (*Id.*) As a result, Plaintiffs allege that multiple investment firms and banks, including American Funds, Callan GlidePath Funds, MFS Lifetime Funds, and T. Rower Price, offered alternative funds. (*Id.* ¶¶ 95–97.) However, under the Plan, participants who want to "invest in a target date strategy have no choice other than" the Schwab Funds, which significantly underperformed. (*Id.* ¶ 100.) As a result, Plaintiffs allege that Defendants breached their fiduciary duties.

Plaintiffs also allege that Defendants failed to adequately monitor and remove the Schwab Funds despite the funds' underperformance when compared to other meaningful benchmarks and alternative suites. (*Id.* ¶¶ 101–105, 107.) Plaintiffs contend that this underperformance data "was publicly available to [Defendants] at the time of their decision-making" and that "[p]rudent fiduciaries would have acknowledged that this pattern of underperformance did not bode well for" the Schwab Funds. (*Id.* ¶ 110.)

3.   Allegations Pertaining to the Plan's RKA Costs/Fees[7]

Plaintiffs allege that Defendants failed "to negotiate favorable rates given that costs of implementation do not change for the service provider." (*Id.* ¶ 127.) Plaintiffs also allege that Defendants should have sought investing alternatives by issuing Requests for Proposal ("RFP") at reasonable intervals, which they failed to do. (*Id.* ¶ 130.) As a result of Defendants' breaches of their fiduciary duties, including the failure to conduct RFPs, Plaintiffs allege they suffered

---

[7] As noted, Defendants' current Motion does not seek dismissal of the portions of Counts One and Four stemming from Defendants' purported actions (and inactions) with respect to managing RKA fees. Nonetheless, the Court provides a brief overview of those allegations.

"excessive administrative and recordkeeping fees which wasted the assets of the Plan and the assets of the participants." (*Id.* ¶ 136.)

The RKA services for the Plan at issue were performed each year by Schwab Retirement Plan Services. (*Id.* ¶ 137.) Plaintiffs allege that "based on the fact that the Plan paid relatively the same amount in recordkeeping fees from 2016 to 2020, there is little to suggest that Defendants conducted an RFP, or at least an effective one, at reasonable intervals to determine whether the Plan could obtain better recordkeeping and administrative fee pricing from other service providers." (*Id.* ¶ 139.) When compared to other recordkeepers, Plaintiffs allege that the Plan participants paid more in fees. (*Id.* ¶¶ 141–150.) Based on the information provided, Plan participants paid on average $10 to $20 more in fees, as opposed to other plans. (*Id.* ¶ 149.) Thus, according to Plaintiffs, "with over 7,700 participants and over $1.2 billion [] in assets in 2019, [Defendants] should have been able to negotiate recordkeeping costs in the $35 per participant range," which was normal for other recordkeepers. (*Id.* ¶ 154.)

4.    Allegations Pertaining to Reduced Plan Contributions

Lastly, Plaintiffs contend that Defendants improperly used plan contributions to offset Novo-Nordisk's costs. As alleged, a trust was adopted by Novo Nordisk through a trust agreement where the trustee was to "hold and invest contributions made under the Plan." (*Id.* ¶ 159.) Plaintiffs allege that Defendants breached their ERISA fiduciary duties by misusing the Plan's assets for their own benefit. (*Id.* ¶ 160.) Plaintiffs also allege that $6.2 million was "improperly steered from paying RKA costs and instead used to benefit the Company." (*Id.* ¶ 164.)

In sum, Plaintiff asserts four causes of action. Each cause of action stems from underperformance of the Schwab Funds and injury resulting from such underperformance, the assertion that Plan participants overpaid for RKA costs and then did not receive the benefit of the

investments, and that Defendants should have used forfeited Plan funds to pay the Plan's RKA costs.  (*Id.* ¶¶ 22–28.)

## II.  SUBJECT MATTER JURISDICTION

The Court has subject matter jurisdiction over the claims in the Complaint pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1332(e)(1).

## III.  LEGAL STANDARD

Rule 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (abrogated on other grounds)).

A district court conducts a three-part analysis when considering a motion to dismiss pursuant to Rule 12(b)(6).  *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).  "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'"  *Id.* (alteration in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)).  Second, the court must accept as true all of the plaintiff's well-pled factual allegations and "construe the complaint in the light most favorable to the plaintiff."  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted).  The court, however, may ignore legal conclusions or factually unsupported accusations that merely state the defendant unlawfully harmed the plaintiff.  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).  Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'"  *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679).  A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 663).  On a Rule 12(b)(6) motion, the "defendant bears the burden of showing

that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

## IV.    DISCUSSION

Congress enacted ERISA to protect "employees and their dependents" whose "well-being and security" was affected by "the lack of . . . adequate safeguards" for employee benefit plans. 29 U.S.C. § 1001(a); *Mator v. Wesco Distribution, Inc.*, 102 F.4th 172, 183 (3d Cir. 2024). Congress also did not want "to create a system that is so complex that administrative costs, or litigation expenses, unduly discourage employers from offering welfare benefit plans in the first place." *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014) (quoting *Varity Corp. v. Howe*, 516 U.S. 489, 497 (1996)).   ERISA therefore "represents a careful balancing between ensuring fair and prompt enforcement of rights under a plan and the encouragement of the creation of such plans." *Id.* at 424 (internal citation and quotation marks omitted); *see also Sweda v. Univ. of Pa.*, 923 F.3d 320, 327 (3d Cir. 2019) (ERISA furthers the distinct goals of "safeguarding anticipated employee benefits" and "assuring a predictable set of liabilities" for employers) (quoting first *Cutaiar v. Marshall*, 590 F.2d 523, 529 (3d Cir. 1979), then *Renfro v. Unisys Corp.*, 671 F.3d 314, 321 (3d Cir. 2011)).

### A.    BREACH OF THE FIDUCIARY DUTY OF PRUDENCE (COUNT ONE)

Plaintiffs assert in Count One that the Retirement Committee, as fiduciaries of the Plan, failed to act as prudent persons when managing the assets of the Plan and by failing to replace the underperforming Schwab Funds.  (Compl. ¶¶ 167–173.)  To state a claim for a breach of a fiduciary duty under ERISA, Plaintiffs must plausibly allege that "(1) a plan fiduciary (2) breache[d] an ERISA-imposed duty (3) causing a loss to the plan." *Barragan v. Honeywell Int'l Inc.*, Civ. No. 24-4529, 2024 WL 5165330, at *4 (D.N.J. Dec. 19, 2024) (quoting *Leckey v. Stefano*, 501 F.3d

212, 225–26 (3d Cir. 2007), *as amended* (Dec. 21, 2007)).  For purposes of Count One, the parties

do not dispute that Defendants are fiduciaries of the Plan.

ERISA imposes both a duty of loyalty and a duty of prudence.  29 U.S.C. § 1104(a)(1)(A)–

(B).  The duty of prudence commands a fiduciary to act "with the care, skill, prudence, and

diligence under the circumstances then prevailing that a prudent man acting in a like capacity and

familiar with such matters would use in the conduct of an enterprise of a like character and with

like aims."  *Id.* § 1104(a)(1)(B).  Moreover, a fiduciary must "discharge his duties with respect to

a plan solely in the interest of the participants and beneficiaries . . . for the exclusive purpose of .

. . providing benefits to participants and their beneficiaries; and . . . defraying reasonable expenses

of administering the plan."  29 U.S.C. §§1104(a)(1), (a)(1)(A).  In addition to the prudent man

standard, fiduciaries are required to diversify investments unless it would be imprudent, and to

administer the plan according to governing documents and instruments.  *Id.* § 1104(a)(1)(C), (D).

Fiduciaries are personally liable for losses due to breach.  *Id.* § 1109(a).

A fiduciary must prudently select investments and the failure to "monitor . . . investments

and remove imprudent ones" may constitute a breach.  *See Sweda*, 923 F.3d at 328; *see also* 29

C.F.R. § 2550.404a-1(b)(1)(i) (fiduciaries must give "appropriate consideration to those facts and

circumstances that . . . the fiduciary knows or should know are relevant to the particular investment

or investment course of action involved"); *see also Fink v. Nat'l Sav. & Trust Co.*, 772 F.2d 951,

957 (D.C. Cir. 1985) ("investigation of the merits of a particular investment is at the heart of the

prudent person standard").  Fiduciaries must also understand and monitor plan expenses.  *See*

*Sweda*, 923 F.3d at 328.  "Expenses, such as management or administrative fees, can sometimes

significantly reduce the value of an account in a defined-contribution plan," by decreasing its

immediate value, and by depriving the participant of the prospective value of funds that would have continued to grow if not taken out in fees. *Id.*

In the Motion, Defendants argue that Plaintiffs fail to allege facts to plausibly plead breach of the duty of prudence with respect to selecting the Schwab Funds. Specifically, Defendants argue that Plaintiffs fail to allege "circumstantial facts [to] allow[] the Court to infer that the fiduciary process was flawed." (Moving Br. at 9.) Defendants also argue that 1) the Court cannot infer imprudence by merely showing underperformance of the Schwab Funds; 2) Plaintiffs cannot solely rely on the Morningstar Index[8] to compare performance from other funds; and 3) Plaintiffs fail to allege that their chosen comparators provide a meaningful benchmark. (*Id.* at 9–23.) Plaintiffs insist that they adequately alleged underperformance of the Schwab Funds and that meaningful benchmarks are not required. (Opp'n Br. at 16.) Nonethless, Plaintiffs argue that its benchmarks are meaningful. (*Id.* at 16–20.)

For the reasons that follow, the Court finds that Plaintiffs' allegations are conclusory and speculative and fail to make out a claim that the Retirement Committee breached the fiduciary duty of prudence. Although Plaintiffs allege that the Schwab Funds significantly underperformed (Compl. ¶¶ 102, 105, 107, 108–111), they fail to plead allegations pertaining to the Retirement Committee's process in arriving at its decision to use the Schwab Funds. *See Sweda*, 923 F.3d at 329 ("[A] court assesses a fiduciary's performance by looking at process rather than results, 'focusing on a fiduciary's conduct in arriving at [a] . . . decision . . . and asking whether a fiduciary employed the appropriate methods to investigate and determine the merits of a particular investment.'" (quoting *In re Unisys Sav. Plan Litig.*, 74 F.3d 420, 434 (3d Cir. 1996)) (second alteration in original)). There are no allegations challenging how the Retirement Committee

---

[8] The Morningstar Index was created to help investors make meaningful comparisons between funds.

arrived at the decision to choose the Schwab Funds and to continue using them. *Contra Buescher v. N. Am. Lighting, Inc.*, Civ. No. 24-cv-2076, 2025 WL 1927503, at *13 (C.D. Ill. June 30, 2025) (finding that the plaintiff plausibly alleged that the defendants' process was flawed by explaining in detail that the Administrative Committee failed to investigate and consult with independent decisionmakers).

Plaintiffs attempt to rely on comparative results from other available, better performing, funds because ERISA plaintiffs generally lack the inside information necessary to make out their claims in detail unless and until discovery commences. But the allegations presented, when read liberally, do not demonstrate "more than the mere possibility of misconduct" by the Retirement Committee. *Pension Ben. Guar. Corp. ex rel. St. Vincent Cath. Med. Centers Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 719 (2d Cir. 2013). Allegations of underperformance, without more, do not suffice. *Smith v. CommonSpirit Health*, 37 F.4th 1160, 1166 (6th Cir. 2022) ("Merely pointing to another investment that has performed better in a five-year snapshot of the lifespan of a fund that is supposed to grow for fifty years does not suffice to plausibly plead an imprudent decision—largely a process-based inquiry—that breaches a fiduciary duty."); *Meiners v. Wells Fargo & Co.*, 898 F.3d 820, 823 (8th Cir. 2018) ("The fact that one fund with a different investment strategy ultimately performed better does not establish anything about whether the Wells Fargo TDFs were an imprudent choice at the outset."). Similarly here, there are no factual allegations to establish that the Retirement Committee made an imprudent choice to select the Schwab Funds "at the outset." *Id.*

Furthermore, there are no allegations that the investments or the Retirement Committee's choice to use the Schwab Funds were risky, or that the Retirement Committee knew of but ignored reasonable alternatives. Hindsight cannot be used to plead a breach of the duty of prudence. *See*

*Pension Ben. Guar. Corp.*, 712 F.3d at 721 (concluding that the plaintiffs failed to adequately allege breach of the duty of prudence because "a decline in price indicates only that the security turns out to have been, in hindsight, a bad investment"); *see also Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 596 n.7 (8th Cir. 2009) ("It is clear that nothing in ERISA requires every fiduciary to scour the market to find and offer the cheapest possible fund." (quotation makers and citation omitted)); *Matney v. Barrick Gold of N. Am.*, 80 F.4th 1136, 1154 n.15 (10th Cir. 2023) ("[I]mprudence cannot be inferred based solely on allegations identifying the existence of lower cost or better performing alternative funds."); *Cho v. Prudential Ins. Co. of Am.*, Civ. No. 19-19886, 2021 WL 4438186, at *8 (D.N.J. Sept. 27, 2021) ("Not only is hindsight 20/20, but it also does not meet the plausibility requirement.").

Plaintiffs present charts illustrating that the Schwab Funds underperformed in comparison to other funds. (Compl. ¶ 107.) If anything, these charts demonstrate that the Schwab Funds' underperformance was only slight in comparison to other funds, militating against an inference that Defendants acted imprudently.[9] *Cho*, 2021 WL 4438186, at *8 ("Plaintiff has not alleged that the underperformance was sufficiently substantial").

In short, there are no allegations that if proved, "would show that an adequate investigation would have revealed to a reasonable fiduciary that the investment at issue was improvident." *Pension Ben. Guar. Corp.*, 712 F.3d at 718. In other words, the Court is "unable to infer from what is alleged that the process was flawed" because Plaintiff "ha[s] provided nothing more than conclusory assertions that [Defendants] breached [their] duty to prudently and loyally select and maintain the plan's mix and range of investment options." *Renfro*, 671 F.3d at 327–28.

---

[9] For example, over a five-year period, the management funds performed at 7.63% and 7.32% (V and VI funds, respectively) as compared to the two benchmark funds that both yielded a 7.93% return. (Compl. ¶ 105.) Additionally, over another five year period, the same funds performed at 2.59% and 2.54%, respectively, compared to the two benchmark funds that yielded a 2.98% return. (*Id.* ¶ 106.)

Specifically, Plaintiff fails to offer the "numerous and specific factual allegations" of "substantial circumstantial evidence" that would allow this Court to reasonably infer a breach of Defendants' duty of prudence.  *Sweda*, 923 F.3d at 332.

### B.     BREACH OF THE FIDUCIARY DUTY OF LOYALTY (COUNT TWO)

Count Two asserts a claim for breach of the fiduciary duty of loyalty against all Defendants for using forfeited funds in the Plan for Novo Nordisk's benefit instead of the Plan participants and beneficiaries.  (Compl. ¶ 178.)

As noted above, to state a claim for a breach of a fiduciary duty under ERISA, a plaintiff must plausibly allege that "(1) a plan fiduciary (2) breache[d] an ERISA-imposed duty (3) causing a loss to the plan."  *Barragan*, 2024 WL 5165330, at *4.  The duty of loyalty requires a fiduciary to "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries" and "for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan."  29 U.S.C. § 1104(a)(1)(A).  "To plead a loyalty claim, courts look for allegations suggesting that the fiduciary made decisions benefitting itself or a third party."  *Cho*, 2021 WL 4438186, at *11 (quoting *Pegram v. Herdrich*, 530 U.S. 211, 235 (2000)).

Here, Plaintiffs allege that Defendants acted disloyally by using forfeited funds to offset contributions instead of using the funds to pay for RKA costs and fees, which Plaintiffs and Plan participants had to pay.  (Compl. ¶¶ 9, 159, 162–166.)  In the Motion, Defendants first argue that use of the forfeited funds to offset contributions was not a decision they made as fiduciaries, and thus, they cannot be liable for breaching a fiduciary duty.  (Moving Br. at 29.)  Plaintiffs argue that fiduciary duties attach to decisions about managing assets and distributing property to beneficiaries.  (Opp'n Br. at 32.)

The Court rejects Defendants' argument that they are not fiduciaries. It is generally understood that "[a]t common law, fiduciary duties characteristically attach to decisions about managing assets and distributing property to beneficiaries." *Pegram*, 530 U.S. at 231. These fiduciary duties have been recognized in the context of employer-managed retirement plans. *Rodriguez v. Intuit Inc.*, 744 F. Supp. 3d 935, 943 (N.D. Cal. 2024) (noting that forfeitures are plan assets and the management and disposition of plan assets "must be judged against ERISA's fiduciary standards."); *Barragan*, 2024 WL 5165330, at *3 (finding "the decision to allocate forfeited amounts constitutes a fiduciary, not settlor, function."); *Hutchins v. HP Inc.*, 737 F. Supp. 3d 851, 860 (N.D. Cal. 2024) (same); *Cain v. Siemens Corp.*, Civ. No. 24-8730, 2025 WL 2172684, at *3 (D.N.J. July 31, 2025) (same).

Having found that Defendants acted as fiduciaries, the Court next considers whether the allegations as pled plausibly demonstrate that Defendants breached their duty of loyalty. Plaintiffs argue that only Novo Nordisk benefited from the use of forfeitures, "while participants were saddled with excessive fees that ERISA was enacted to protect against." (Opp'n Br. at 30.) Plaintiffs further allege in the Complaint that Defendants used $6 million forfeited funds to reduce company contributions instead of using the funds to reduce or eliminate the amounts charged to plan participants for fees and costs. (Compl. ¶¶ 9, 159, 162–166.)

Defendants argue that they complied with the terms of the Plan and that the Treasury Department and Congress "have made clear . . . that a defined contribution plan may use forfeitures to provide benefits to other participants (thereby reducing employer contributions)." (Moving Br. at 25.) They also argue that Congress enacted ERISA to "protect contractually defined benefits" as outlined in the "written plan documents," and not to define what those benefits must be. (*Id.* at 22.)

13

For the reasons that follow, the Court finds that Plaintiffs have failed to adequately allege a breach of the duty of loyalty.  First, the Plan expressly stated that "[a]ll forfeited amounts may be used . . . *to reduce the applicable Employer's future contributions*, restore forfeited Accounts, . . . or pay certain Plan expenses."  (Plan ¶ 45 (emphasis added).)  The text of the Plan is therefore fatal to Plaintiffs' allegations.  *See Wright v. JP Morgan Chase & Co.*, Civ. No. 25-525, 2025 WL 1683642, at *4 (C.D. Cal. June 13, 2025) ("Plaintiff's theory rests on the flawed assumption that the Plan gives Defendants discretion to use forfeited funds to pay administrative expenses that would otherwise be covered by Plan participants."); *Cain*, 2025 WL 2172684, at *3 ("By Plaintiff's logic, a fiduciary would always be required to use Forfeitures to pay administrative costs even if the plan document gave it the option to reallocate those funds to reduce employer contributions."); *see also Sievert v. Knight-Swift Transp. Holdings, Inc.*, Civ. No. 24-2443, 2025 WL 1248922, at *5 (D. Ariz. Apr. 30, 2025) ("[A] plan sponsor's decision to allocate forfeitures toward reducing its own employer contributions, without more, is not sufficient to state a claim for a breach of fiduciary duty of loyalty or prudence under ERISA.").

As aptly explained by this Court previously in *Cain*, requiring Defendants to use the forfeitures to pay administrative costs would "use the fiduciary duties of loyalty and prudence to create a new benefit to participants that is not provided in the plan document itself."  *Cain*, 2025 WL 2172684, at *4.

Accordingly, the Court finds that Plaintiffs have failed to state a claim that Defendants breached the duty of loyalty by their use of the forfeited funds to offset employer contributions.

## C.    BREACH OF ERISA'S ANTI-INUREMENT PROVISION (COUNT THREE)

Count Three asserts a claim for breach of ERISA's Anti-Inurement Provision by Novo Nordisk and the Board.  Plaintiffs allege that they are "liable to restore to the Plan all losses caused

14

by their breaches of ERISA's anti-inurement provision, and also [to] restore any profits resulting from such breaches."  (Compl. ¶ 187.)

ERISA's anti-inurement provision provides that, absent specific enumerated exceptions, "the assets of a plan shall never inure to the benefit of any employer and shall be held for the exclusive purposes of providing benefits to participants in the plan and their beneficiaries and defraying reasonable expenses of administering the plan."  29 U.S.C. § 1103(c)(1); *Raymond B. Yates, M.D., P.C. Profit Sharing Plan v. Hendon*, 541 U.S. 1, 22 (2004) ("The [anti-inurement] provision demands only that plan assets be held for supplying benefits to plan participants.").  "The purpose of the anti-inurement provision, in common with ERISA's other fiduciary responsibility provisions, is to apply the law of trusts to discourage abuses such as self-dealing, imprudent investment, and misappropriation of plan assets, by employers and others."  *Id.*  When a plaintiff "do[es] not allege that [the defendant] used any of the assets for a purpose other than to pay its obligations to the Plan's beneficiaries, [the defendant] could not have violated the anti-inurement provision."  *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 443 (1999).

Plaintiffs allege that Novo Nordisk and the Board breached ERISA's anti-inurement provision because "use of the forfeited funds to defray its own contributions to the Plan in order to save itself millions of dollars in funds that [Novo Nordisk] would otherwise have to contribute to the Plan, caused the assets of the Plan to inure to the benefit of [Novo Nordisk]."  (Compl. ¶ 186.)  Defendants argue that Plaintiffs fail to state an anti-inurement claim because they do not allege that forfeitures were removed from the Plan or used for any purpose other than to provide participants with benefits.  (Moving Br. at 35.)  Defendants also contend that it is immaterial that they may have received an indirect benefit by using the funds to offset future contributions.  (*Id.* at 36.)  Lastly, Defendants argue that using plan assets to offset future contributions does not divert

assets away from the Plan.  (*Id.* at 37.)  Plaintiffs argue that in using the funds to offset future contributions, Novo Nordisk and the Board caused Plan participants to pay excessive fees and therefore violated ERISA's anti-inurement provision.  (Opp'n Br. at 37.)

Here, Plaintiffs' anti-inurement claim also fails because ERISA does not create a duty for a plan sponsor to maximize pecuniary benefit, "only to ensure that participants have received the benefits promised to them."  *Sievert*, 2025 WL 1248922, at *6.  Notably, and most fatal to the claim is that Plaintiffs do not allege that any of the forfeited assets left the Plan.  *See Madrigal v. Kaiser Found. Health Plan, Inc.*, Civ. No. 24-5191, 2025 WL 1299002, at *6 (C.D. Cal.  May 2, 2025) ("Plaintiff's failure to allege that any assets left the Plan is sufficient to foreclose her claim."); *Barragan*, 2024 WL 5165330, at*6 ("As these forfeited amounts do not leave the Plan and are used to satisfy Honeywell's obligations according to the Plan's language, the Court finds Honeywell is not acting in violation of the anti-inurement provision."); *Wright*, 2025 WL 1683642, at *4 (same).

Furthermore, the Court agrees with Defendants that allegations that fiduciaries received incidental or indirect benefits does not satisfy a claim for breach of ERISA's anti-inurement provision.  *See Madrigal*, 2025 WL 1299002, at *6 (noting that incidental benefits to the employer do not constitute a breach of the anti-inurement provision); *Krohnengold v. N.Y. Life. Ins. Co.*, 2022 WL 3227812, at *10 (S.D.N.Y. Aug. 10, 2022) ("[A]llegations of 'indirect' benefit inuring to an employer are insufficient to state an anti-inurement claim[.]" (quoting *Flanigan v. Gen. Elec. Co.*, 242 F.3d 78, 88 (2d Cir. 2001))); *Hughes Aircraft Co.*, 525 U.S. at 442–45 (concluding that incidental benefits to the employer did not constitute a breach ERISA-imposed duties). Accordingly, Plaintiffs have failed to state a claim of a breach of ERISA's anti-inurement provision.

### D.     BREACH OF THE DUTY TO MONITOR OTHER FIDUCIARIES (COUNT FOUR)

Plaintiffs lastly assert a claim for the failure to monitor other fiduciaries, alleging that Novo Nordisk and the Board "had a duty to monitor [the Retirement Committee] to ensure that [they] were adequately performing their fiduciary obligations, and to take prompt and effective action to protect the Plan in the event that the [the Retirement Committee] were not fulfilling those duties." (Compl. ¶ 191.)

Defendants seek dismissal of the portion of this claim related to the Retirement Committee's decision to invest in the relevant Schwab Funds and its decision regarding the use of forfeited funds.

"Courts recognize that when a fiduciary has and exercises the power to appoint and remove plan administrators, it has the duty to monitor those appointees." *McGowan v. Barnabas Health, Inc.*, Civ. No. 20-13119, 2021 WL 1399870, at *8 (D.N.J. Apr. 13, 2021). The theory is that "if a plan administrator continually made poor investment decisions, an administrator discharging its duty to monitor should have noticed." *Id.* Accordingly, the "failure to 'monitor . . . investments and remove imprudent ones' may constitute a [fiduciary] breach." *Sweda*, 923 F.3d at 328 (quoting *Tibble v. Edison Int'l*, 575 U.S. 523, 530 (2015)). However, "Plaintiffs cannot maintain a claim for breach of the duty to monitor . . . absent an underlying breach of the duties imposed under ERISA." *In re Allergan ERISA Litig.*, Civ. No. 17-1554, 2018 WL 8415676, at *7 (D.N.J. July 2, 2018) (internal citation omitted), *aff'd sub nom. In re Allergan Erisa Litig.*, 975 F.3d 348 (3d Cir. 2020) (quoting *Rinehart v. Lehman Bros. Holdings Inc.*, 817 F.3d 56, 68 (2d Cir. 2016)). Because the Complaint fails to adequately plead breaches of the underlying duties, the portions of Plaintiffs' corresponding claim for failure to monitor will also be dismissed.

V.    <u>**CONCLUSION**</u>

For the reasons stated above, the Court will **GRANT** the Motion.  Counts One through Four will be dismissed without prejudice and in part as requested by Defendants.  The claims will be dismissed to the extent they are premised on the decision to include the Schwab Funds as Plan investments or to use forfeitures to offset contributions instead of paying recordkeeping fees.  The following portions of two counts will be permitted to proceed: 1) the portion of Count One alleging that the Retirement Committee breached its duty of prudence by permitting the Plan to pay excessive recordkeeping fees; and 2) the portion of Count Four alleging that Novo Nordisk and the Board breached their duty to monitor the Retirement Committee regarding that issue.  An accompanying Order will follow.


Date: August 19, 2025


<u>s/ Zahid N. Quraishi</u>
**ZAHID N. QURAISHI**
**UNITED STATES DISTRICT JUDGE**