**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JOHN FUMICH, LAURA MISCHLEY, RAPHAEL HINTON, RONNIE MCLEAN, and THOMAS CHAFFIN, individually and on behalf of all others similarly situated, | CIVIL ACTION NO.: 3:24-cv-09158 |
| Plaintiffs, | **Motion Day: January 20, 2026**<br>**Document Electronically Filed** |
| v. | **ORAL ARGUMENT REQUESTED** |
| NOVO NORDISK INC., THE BOARD OF DIRECTORS OF NOVO NORDISK INC., THE NOVO NORDISK INC. RETIREMENT COMMITTEE, and JOHN DOES 1-30, | Judge:  Hon. Judge Zahid N. Quraishi |
| Defendants. | |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR
MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

# TABLE OF CONTENTS

**Page**

ARGUMENT ..................................................................................................1

I.    PLAINTIFFS DO NOT ALLEGE A FLAWED
      INVESTMENT MONITORING PROCESS. .....................................1

      A.    UNDERPERFORMANCE IS NOT IMPRUDENCE. ..............1

      B.    THE SCHWAB FUNDS' MORNINGSTAR
            RANKINGS DO NOT SAVE COUNT I. ................................5

      C.    PLAINTIFFS DO NOT PLEAD A MEANINGFUL
            BENCHMARK. ......................................................................7

            1.    THE MEANINGFUL BENCHMARK
                  REQUIREMENT APPLIES HERE. ...............................8

            2.    PLAINTIFFS DO NOT ALLEGE MEANINGFUL
                  BENCHMARKS. ..........................................................10

      D.    NEITHER THE MAGNITUDE NOR DURATION OF
            THE ALLEGED PERFORMANCE SUGGESTS THE
            SCHWAB FUNDS WERE IMPRUDENT
            INVESTMENTS. ..................................................................13

II.   THE COURT SHOULD STRIKE PLAINTIFFS'
      PROHIBITED TRANSACTION CLAIM. ........................................14

CONCLUSION ............................................................................................15

i

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Anderson v. Intel Corp. Inv. Pol'y Comm.*,
137 F.4th 1015 (9th Cir. 2025) ...................................................................7, 9

*Anderson v. Intel Corp. Inv. Pol'y Comm.*,
579 F. Supp. 3d 1133 (N.D. Cal. Jan. 8, 2022), *aff'd*, 137 F.4th 1015 ..............11

*Bracalente v. Cisco Sys., Inc.*,
2024 WL 2274523 (N.D. Cal. May 20, 2024).....................................................12

*Cunningham v. Cornell Univ.*,
604 U.S. 693 (2025)...........................................................................................14

*Davis v. Wash. Univ. in St. Louis*,
960 F.3d 478 (8th Cir. 2020) ...............................................................................9

*del Bosque v. Coca-Cola Sw. Beverages LLC*,
2025 WL 3171326 (N.D. Tex. Nov. 13, 2025) ...................................................10

*Fifth Third Bancorp v. Dudenhoeffer*,
573 U.S. 409 (2014)..............................................................................................2

*Fulton v. FCA US LLC*,
2025 WL 2800003 (E.D. Mich. Sept. 30, 2025) ...................................................5

*Fumich v. Novo Nordisk Inc.*,
2025 WL 2399134 (D.N.J. Aug. 19, 2025) ...............................................1, 13, 14

*In re Biogen, Inc. ERISA Litig.*,
2021 WL 3116331 (D. Mass. July 22, 2021) ........................................................6

*In re LinkedIn ERISA Litig.*,
2021 WL 5331448 (N.D. Cal. Nov. 16, 2021) ....................................................12

*In re Unisys Savs. Plan Litig.*,
74 F.3d 420 (3d Cir. 1996) ...............................................................................4, 6

*Johnson v. Parker-Hannifin Corp.*,
   122 F.4th 205 (6th Cir. 2024),
   *petition for cert. filed* (U.S. Mar. 28, 2025)..................................................4, 5, 7

*Kistler v. Stanley Black & Decker, Inc.*,
   2024 WL 3292543 (D. Conn. July 3, 2024) ......................................................6

*Kruchten v. Ricoh USA, Inc.*,
   2024 WL 3518308 (3d Cir. July 24, 2024)..........................................................8

*Luckett v. Wintrust Fin. Corp.*,
   2023 WL 4549620 (N.D. Ill. July 14, 2023) .....................................................11

*Matney v. Barrick Gold of N. Am.*,
   80 F.4th 1136 (10th Cir. 2023) ......................................................................1, 7

*Mator v. Wesco Distrib., Inc.*,
   102 F.4th 172 (3d Cir. 2024) ..........................................................................8, 9

*Matousek v. MidAmerican Energy Co.*,
   51 F.4th 274 (8th Cir. 2022) .............................................................................7

*Meiners v. Wells Fargo & Co.*,
   898 F.3d 820 (8th Cir. 2018) ..........................................................................10

*N.J. Chinese Cmty. Ctr. v. McAleer*,
   2025 WL 1564869 (D.N.J. June 3, 2025).........................................................15

*Parker-Hannifin Corp. v. Johnson*,
   No. 24-1030 (Dec. 9, 2025) ..............................................................................7

*Pension Benefit Guar. Corp. ex rel. St. Vincent Cath. Med. Ctrs. Ret. Plan v.
   Morgan Stanley Inv. Mgmt. Inc.*,
   712 F.3d 705 (2d Cir. 2013) .............................................................................2

*Phillips v. Cobham Advanced Elec. Sols., Inc.*,
   2025 WL 2689268 (N.D. Cal. Sept. 19, 2025)......................................10, 12, 13

*Savor Health, LLC v. Day*,
   2022 WL 1500782 (S.D.N.Y. May 12, 2022) ..................................................15

*Sellers v. Trs. of Boston Coll.*,
   647 F. Supp. 3d 14 (D. Mass. 2022)..................................................................5

iii

*Smith v. CommonSpirit Health*,
2021 WL 4097052 (E.D. Ky. Sept. 8, 2021), *aff'd*, 37 F.4th 1160 (6th Cir. 2022) ............................................................................................11

*Smith v. CommonSpirit Health*,
37 F.4th 1160 (6th Cir. 2022) .........................................................7, 9

*Sweda v. Univ. of Pennsylvania*,
923 F.3d 320 (3d Cir. 2019) .......................................................3, 4, 8

*Tullgren v. Booz Allen Hamilton Inc.*,
2023 WL 2307615 (E.D. Va. Mar. 1, 2023).....................................10

**STATUTES**

ERISA ...............................................................................................2, 4

**RULES**

Rule 12 ...................................................................................................4

Rule 12(b)(6)..........................................................................................2

Rule 12(f) .............................................................................................15

Plaintiffs' Opposition to Defendants' Motion to Dismiss seeks to wish away the order dismissing their original complaint, ignores the arguments in Defendants' Motion to Dismiss (the "Motion"), thus conceding them, and misstates relevant authority. In short, the Court should dismiss Plaintiffs' claims challenging the investment monitoring process and alleging a prohibited transaction.

## ARGUMENT

### I.     Plaintiffs Do Not Allege A Flawed Investment Monitoring Process.

#### A.     Underperformance Is Not Imprudence.

Plaintiffs' Opposition confirms the obvious—they premise their challenge to the Schwab Funds solely on the allegation that a few other target date suites allegedly generated better investment returns. *E.g.*, Opp'n at 7 (Schwab Funds are imprudent because they "underperformed the Comparator Funds"), 13 (Schwab Funds had "consistent and material underperformance"). That is not enough. It is "uniformly recognized [that] imprudence cannot be inferred based solely on allegations identifying the existence of . . . better performing alternative funds." *Matney v. Barrick Gold of N. Am.*, 80 F.4th 1136, 1154 n.15 (10th Cir. 2023). The Court already dismissed Plaintiffs' claim challenging the Schwab Funds for this exact reason, explaining that "[a]llegations of underperformance, without more, do not suffice," *Fumich v. Novo Nordisk Inc.*, 2025 WL 2399134, at *5 (D.N.J. Aug. 19, 2025), yet Plaintiffs offer nothing else.

1

Instead of curing the defects in their original complaint by adding allegations identifying "red flags" regarding the Schwab Funds that might support a claim of imprudence, Plaintiffs posit that alleging underperformance alone is sufficient because Defendants did not move to dismiss their independent recordkeeping fee claim. Plaintiffs contend the allegations in the Complaint must be read "holistically," Opp'n at 17-18, and, as a result, if any claim proceeds beyond the pleading stage, then all claims survive dismissal. But if that was an accurate statement of the law (it is not), the Court would not have dismissed the investment monitoring claim (and now-abandoned forfeiture claim) the first time around—Plaintiffs asserted the same claim challenging the Schwab Funds and the same claim challenging recordkeeping fees. ECF 1 ¶¶ 7-9.

Moreover, permitting implausible claims to proceed merely because some other claim moves forward would eviscerate the basic purpose of Rule 12(b)(6), an "important mechanism for weeding out meritless claims" in the ERISA context that is designed to "divide the plausible sheep from the meritless goats." *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014). Among other reasons, this is because "the prospect of discovery" in a fiduciary breach class action is "ominous" and "elevates the possibility that a plaintiff with a largely groundless claim will simply take up the time of a number of other people, with the right to do so representing an *in terrorem* increment of the settlement value." *Pension Benefit*

2

*Guar. Corp. ex rel. St. Vincent Cath. Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 718-19 (2d Cir. 2013). Plaintiffs are not entitled to probing discovery covering the last six-plus years regarding the process for monitoring the Schwab Funds merely because Defendants do not move to dismiss every claim in the Complaint and where all that Plaintiffs affirmatively offer are threadbare performance allegations.

Plaintiffs' argument primarily relies on *Sweda v. Univ. of Pennsylvania*, 923 F.3d 320 (3d Cir. 2019), which reasoned that a complaint "should not be 'parsed piece by piece to determine whether each allegation, in isolation, is plausible.'"[1] *Id.* at 331. The Third Circuit held that the plaintiffs in *Sweda* plausibly alleged that the plan paid excessive recordkeeping fees and that the fiduciary failed to monitor the plan's investments. *Id.* at 330-31. Specific to the plan's investments, the plaintiffs alleged that the plan fiduciary offered "multiple options in the same asset class and investment style"; "selected and retained identically managed but higher cost retail shares"; offered investments with "layers of unnecessary fees"; offered duplicative investments, thereby "decreasing the value of actively managed funds, reducing the Plan's leverage, and confusing participants," and that "60% of Plan options

---

[1] Plaintiffs made the same argument, citing the same authority, in their opposition to Defendants' motion to dismiss the original complaint and the Court nonetheless dismissed the claim challenging the Schwab Funds. *E.g.*, ECF 25 at 7, 16-17 (arguing the Court must view the allegations in the complaint "holistically" and not "piece by piece"). Repeating unpersuasive arguments cannot change the outcome.

underperformed appropriate benchmarks." *Id.* at 331. These allegations—which do not exist in any form or flavor in Plaintiffs' Complaint and go well beyond the mere underperformance Plaintiffs allege—supported the inference that the process for monitoring investments was flawed. *Id.* at 331-32. The court did not hold that every claim in an ERISA fiduciary breach complaint survives dismissal if a single unique claim is not subject to a Rule 12 motion.

The remaining authority cited in Plaintiffs' Opposition is either inapt or unpersuasive. For instance, Plaintiffs cite *In re Unisys Savs. Plan Litig.*, 74 F.3d 420 (3d Cir. 1996), for their argument that the Court cannot assume Defendants were "justified and informed" in selecting Plan investments and that the prudence of the investment monitoring process cannot be decided at this stage. Opp'n at 11-12. But *Unisys* held only that the defendants had not carried their *summary judgment* burden of "showing the absence of any genuine issue of material fact" regarding the prudence of the fiduciary process. 74 F.3d at 435. The question before the Court at this juncture is not whether the evidence shows the fiduciary process was sound, but whether Plaintiffs can state a plausible claim based only on allegations of lagging performance. They cannot, as this Court has previously recognized.

Plaintiffs' reliance on *Johnson v. Parker-Hannifin Corp.*, 122 F.4th 205, 214-15, 219-20 (6th Cir. 2024), *petition for cert. filed,* (U.S. Mar. 28, 2025) (No. 24-1030) is similarly unavailing. A divided Sixth Circuit panel held allegations that the

4

plan's target date funds had "extremely high turnover" that resulted in "substantial transaction costs" "***coupled with***" underperformance against a meaningful benchmark was enough to state a claim. *Id.* at 215-18 (emphasis in original). The panel emphasized the question before it was whether "allegations of high turnover rate ***and*** underperformance, taken together, sufficiently state a claim for imprudence." *Id.* at 216 (emphasis added). Plaintiffs here allege no turnover issues, no transaction cost problems, and no other indicia of a flawed process—only underperformance. As a result, Plaintiffs' allegations are not plausible.[2]

### B.    The Schwab Funds' Morningstar Rankings Do Not Save Count I.

As Defendants pointed out in their Motion, Plaintiffs' allegations regarding Morningstar rankings are nothing more than an allegation that the Schwab Funds were not, in hindsight, the best-performing target date suite in the marketplace. Mot. at 24. Plaintiffs do not dispute this point. Although they argue that "publicly disseminated information by industry leaders is frequently deemed a supporting *indicia* of imprudence when paired with other allegations," Opp'n at 14-15, none of the cases that Plaintiffs cite held that underperformance allegations alone were

---

[2] The other cases Plaintiffs cite are also inapt. *Fulton v. FCA US LLC*, 2025 WL 2800003 (E.D. Mich. Sept. 30, 2025) (underperformance plus allegations that investments "failed to meet their own internal goals" stated claim); *Sellers v. Trs. of Boston Coll.*, 647 F. Supp. 3d 14, 28-33 (D. Mass. 2022) (alleging that investments underperformed and that defendants ignored numerous "red flags" about those investments, including "court decisions concluding that specific investments in the Plan were imprudent" and an SEC investigation of investment manager).

enough to state a claim, and none support the conclusion that a Morningstar ranking makes a fund imprudent. *Unisys*, 74 F.3d at 436 (evidence suggested an adequate investigation would have shown investment in insurance contracts was imprudent because insurance company that managed contracts had poor credit rating, consultant "strongly recommended" against investments, and regulators were investigating company); *Kistler v. Stanley Black & Decker, Inc.*, 2024 WL 3292543, at *14-16 (D. Conn. July 3, 2024) (fund received "noticeably and consistently poor" ranking from plan's investment consultant and committee minutes indicated fiduciary did not monitor fund); *In re Biogen, Inc. ERISA Litig.*, 2021 WL 3116331, at *6 (D. Mass. July 22, 2021) (challenged fund underperformed similar investment offered by same manager, underwent "strategy overhaul" exposing funds to "rising risk," experienced $16 billion in outflows in four years, and received "widespread criticism" from investment publications).

Plaintiffs also admit that the Complaint only includes allegations regarding Morningstar rankings for 2018 and 2022 and says nothing about the Schwab Funds' rankings for any other year. Opp'n at 15-16. They contend this point is "premature" but do not explain what that means. *Id.* Finally, Plaintiffs do not respond to Defendants' argument that these rankings, to the extent they have any relevance, show that in certain years the Schwab Funds ranked better than half the target date funds in the market, Mot. at 24, conceding this point.

6

**C.      Plaintiffs Do Not Plead A Meaningful Benchmark.**

Every circuit court to consider the question agrees—a plaintiff challenging investment performance must rely on comparators that "hold similar securities, have similar investment strategies, and reflect a similar risk profile" as the challenged investment.[3] *Matousek v. MidAmerican Energy Co.*, 51 F.4th 274, 281 (8th Cir. 2022); *accord Anderson v. Intel Corp. Inv. Pol'y Comm.*, 137 F.4th 1015, 1022-27 (9th Cir. 2025); *Matney*, 80 F.4th at 1153-54; *Smith v. CommonSpirit Health*, 37 F.4th 1160, 1166 (6th Cir. 2022).[4] Plaintiffs' arguments that (1) the Third Circuit has not adopted this requirement for investment claims, (2) this analysis is premature at the motion to dismiss stage, and (3) they plead meaningful benchmarks are all unavailing.

---

[3] Plaintiffs argue Defendants "misappropriated" this quote from *Matousek* and that "no circuit" has adopted this test. Opp'n at 22-23. The plain language of *Matousek* repudiates that point. The Eighth Circuit affirmed dismissal of similar performance claims because "[a]mong the missing details" in the complaint was whether the challenged investments and comparators "hold similar securities, have similar investment strategies, and reflect a similar risk profile." *Matousek*, 51 F.4th at 281.

[4] In *Johnson*, the panel reasoned a "meaningful benchmark may sometimes be one part of an imprudence pleading, but it is not required." 122 F.4th at 216. The defendants in that case filed a petition for certiorari, and the Supreme Court invited the United States to weigh in on this question. The subsequent amicus brief cogently explains that "Plaintiffs pursuing a relative-underperformance theory must identify a meaningful benchmark for comparison." Brief for the United States as Amicus Curiae, *Parker-Hannifin Corp. v. Johnson*, No. 24-1030, at 10 (Dec. 9, 2025). The United States went on to explain that "[t]he suggestion that a meaningful benchmark is unnecessary in a relative-underperformance case conflicts with the decisions of every court of appeals to have passed on the same or similar questions." *Id.*

7

### 1.    The meaningful benchmark requirement applies here.

Plaintiffs argue that the Third Circuit has not yet adopted the meaningful benchmark requirement for investment performance claims and this analysis involves a fact dispute that cannot be resolved on a motion to dismiss. Neither contention has merit. In *Mator v. Wesco Distrib., Inc.*, 102 F.4th 172 (3d Cir. 2024), the Third Circuit applied the meaningful benchmark requirement to a fiduciary breach claim alleging that the plan charged excessive recordkeeping fees. *Id.* at 188. The Third Circuit applied this test again in *Kruchten v. Ricoh USA, Inc.*, 2024 WL 3518308, at *4 (3d Cir. July 24, 2024) (explaining that "the lesson from *Mator* is that plaintiffs need to establish that the comparisons they provide are appropriate"). Plaintiffs have not identified any authority holding that a plaintiff must plead a meaningful benchmark for claims alleging excessive recordkeeping fees but not for claims alleging underperforming investments.[5] That is because there is none.

And Plaintiffs offer no logical basis for applying this pleading requirement to one type of fiduciary breach claim and not the other. In fact, the opposite is true.

---

[5] Plaintiffs cite *Sweda* and *Mator* for the theory that they can rely on "imperfect" comparators. Opp'n at 19-21. *Sweda* did not discuss the meaningful benchmark requirement, other than dicta stating the plaintiffs offered "appropriate benchmarks." 923 F.3d at 331. *Mator* held the plaintiffs alleged apt benchmarks for ***recordkeeping fees*** because they "provide[d] specific plan comparators" and "plausibly allege[d] that the services purchased were sufficiently similar to render the comparisons valid." 102 F.4th at 188-89. Neither opinion supports Plaintiffs' argument that every target date fund is an apt benchmark for every other target date fund, which would abrogate the meaningful benchmark requirement altogether.

8

Both inquiries ask the same question: whether the comparison provides a sound basis for inferring imprudence. The meaningful benchmark requirement exists because comparing dissimilar things proves nothing—"[c]omparing apples and oranges is not a way to show that one is better or worse than the other." *Davis v. Wash. Univ. in St. Louis*, 960 F.3d 478, 485 (8th Cir. 2020). That principle applies with equal force whether a plaintiff challenges fees or investment returns.

Plaintiffs' argument that this pleading requirement involves fact disputes fares no better. Opp'n at 20-21. If this were true, the Third Circuit would have said so in either *Mator* or *Kruchten* but did not. Instead, it evaluated whether the plaintiffs plausibly alleged meaningful comparators, the same inquiry this Court should undertake. Each of the cases that Plaintiffs cite in support of their argument that this requirement does not apply at the pleadings stage predates *Mator*. Opp'n at 21.

Finally, Plaintiffs' argument that the Third Circuit "join[ed]" the First, Fourth, Fifth, Sixth, and Ninth Circuits in rejecting the meaningful benchmark requirement, Opp'n at 21-22, is belied by *Mator*, *Kruchten* (both Third Circuit), *Smith* (Sixth Circuit), and *Anderson* (Ninth Circuit) cited herein and in the Motion.[6] The opinions

---

[6] Plaintiffs quote *Anderson* for their argument that a plaintiff "does not necessarily need to identify comparable funds," Opp'n at 22, but misleadingly omit that this language was in the context of a plaintiff that alleged "direct allegations of a breach," 137 F.4th at 1023, and was immediately followed by the statement that "to the extent a plaintiff asks a court to infer that a fiduciary used improper methods based on the performance of the investments, as Anderson in part does here, he must compare that performance to funds or investments that are meaningfully similar." *Id.*

Plaintiffs cite, Opp'n at 22, note only that the First, Fourth, and Fifth Circuits have not considered the meaningful benchmark standard at the pleading stage.[7]

### 2.    Plaintiffs do not allege meaningful benchmarks.

Plaintiffs allege none of the elements of a meaningful benchmark. As Defendants explained in their Motion, the Complaint points only to generic features that are common to most target date funds: that the Schwab Funds and comparators share the same "investment objectives," are "large blend style funds," and "invest primarily in equity (stock) and fixed income (bond) securities." Mot. at 13-14.

Plaintiffs argue that the comparators and Schwab Funds all have a "through" glidepath, and that alone renders the comparators meaningful. Opp'n at 24, 26. But having "some similarities" is not enough. *Meiners v. Wells Fargo & Co.*, 898 F.3d 820, 823 (8th Cir. 2018). Plaintiffs' argument reduces to the assertion that any target date fund with a "through retirement" glidepath is a suitable comparator for any other target date fund using the same glidepath, regardless of any differences in asset allocations, active v. passive management, risk factors, or any number of potential differences. The case law is to the contrary. Mot. at 16; *see also Phillips v. Cobham*

---

[7] Of course, district courts in those circuits have applied the meaningful benchmark requirement to investment performance claims. *E.g.*, *del Bosque v. Coca-Cola Sw. Beverages LLC*, 2025 WL 3171326, at *3 (N.D. Tex. Nov. 13, 2025) ("Because the accounts are managed differently, the Court concludes that the alleged comparators are not meaningful benchmarks."); *Tullgren v. Booz Allen Hamilton Inc.*, 2023 WL 2307615, at *7 (E.D. Va. Mar. 1, 2023) (index not a meaningful benchmark).

*Advanced Elec. Sols., Inc.*, 2025 WL 2689268, at \*7 (N.D. Cal. Sept. 19, 2025) (comparator with same glidepath as challenged target date fund was not a meaningful comparator because "its asset allocation differs significantly, investing nearly 90% in stocks compared to the [challenged fund's] more conservative allocation of 67% in stocks"); *Luckett v. Wintrust Fin. Corp.*, 2023 WL 4549620, at \*3 (N.D. Ill. July 14, 2023) (comparators were not meaningful benchmnark even though they used same "to retirement" glidepath as challenged target date fund); *Smith v. CommonSpirit Health*, 2021 WL 4097052, at \*6 (E.D. Ky. Sept. 8, 2021), *aff'd*, 37 F.4th 1160 (6th Cir. 2022) (rejecting contention that comparators were meaningful because they were "offered by the same investment management firm, share the same management team, and share 'almost identical glide paths'").

Plaintiffs next ignore the asset allocation differences identified in Defendants' Motion (at 16-18) between the Schwab Funds and comparators and insist that they plead meaningful benchmarks because all target date funds are in the same "large blend risk/return category" and have a "similar asset allocation." Opp'n at 26. This is just another way of arguing that every target date fund is a meaningful benchmark for every other target date fund, regardless of their actual differences. Adopting this position would make the meaningful benchmark requirement meaningless, so courts have correctly rejected it. *E.g.*, *Anderson v. Intel Corp. Inv. Pol'y Comm.*, 579 F. Supp. 3d 1133, 1150 (N.D. Cal. Jan. 8, 2022) (allegation that challenged target date

11

fund and comparators were all "long-term investment vehicle[s]" that invested in a "combination of asset classes" were nothing more than "generic TDF features" and did not plead an apt benchmark), *aff'd*, 137 F.4th 1015.

Plaintiffs attempt to rehabilitate their admission that the Schwab Funds use a "blend of passive and active management" while the comparators are all "actively managed"—meaning they cannot be meaningful benchmarks—by arguing that this distinction is irrelevant in the target date fund context. Opp'n at 26-27. Yet again, the courts disagree. Mot. at 15-16; *see also Bracalente v. Cisco Sys., Inc.*, 2024 WL 2274523, at *8 (N.D. Cal. May 20, 2024) (comparators "composed of actively managed funds" were not meaningful benchmark for target date fund "composed of passively managed funds").[8]

Finally, Plaintiffs' reliance on the Morningstar Index is misplaced. Mot. at 18-20. *Phillips* rejected this exact index because it includes "more than 200 funds" with "different 'risk mitigation strategies and objectives.'" 2025 WL 2689268, at *5. Plaintiffs respond that courts might consider indexes "alongside" other meaningful comparators. Opp'n at 29-30. That is not the case here. Pairing a flawed index with flawed individual comparators does not cure the deficiency, it compounds it.

---

[8] Plaintiffs argue *In re LinkedIn ERISA Litig.*, 2021 WL 5331448 (N.D. Cal. Nov. 16, 2021), held it is enough to allege all target date funds are "inherently actively managed." Opp'n at 27. As Judge Davila—who decided *LinkedIn*—explained in *Bracalente*, actively and passively managed target date funds have "obvious differences" and cannot be apt benchmarks for each other. 2024 WL 2274523, at *8.

**D.    Neither The Magnitude Nor Duration Of The Alleged Performance Suggests The Schwab Funds Were Imprudent Investments.**

Plaintiffs do not dispute that their own snapshot allegations show the Schwab Funds' five-year returns in 2014-2018 and 2018-2022 largely ***exceeded*** the returns of Plaintiffs' hand-selected Morningstar Index during those same periods. Mot. at 21-22. They cannot claim with a straight face that this suggests the Schwab Funds were imprudent investments. *E.g.*, *Phillips*, 2025 WL 2689268 at *5 (fact that target date fund outperformed in some years did not permit an inference of imprudence). And just like the original complaint, the charts alleging performance of the Schwab Funds against the comparators "demonstrate that the Schwab Funds' underperformance was only slight in comparison to other funds, militating ***against*** an inference that Defendants acted imprudently." *Fumich*, 2025 WL 2399134, at *6 (emphasis added); *see also* Mot. at 21-23. Plaintiffs' claims fail again for this reason.

Plaintiffs' Opposition labels the periods of outperformance as "outliers," and attempts a sleight of hand with respect to the Schwab Funds' returns, eliding the annual performance allegations in their charts in favor of a self-created and unexplained "average" performance metric, arguing the Schwab Funds' "average underperformance ranged from 8.63% to 38.58%." Opp'n at 30-31. Plaintiffs make no effort to reconcile this argument with the actual returns alleged in the Complaint and cite no authority holding that the contrived "average underperformance" they offer is enough to state a claim, *see id.*, especially when this Court already held that

13

underperformance alone is not enough and chided Plaintiffs for relying only on hindsight performance statistics. *Fumich*, 2025 WL 2399134, at *5.

Plaintiffs also argue that their 2018 and 2022 year-end snapshot performance allegations in and of themselves are enough and that no authority requires them to include performance allegations as of 2019, 2020, 2021, 2023, 2024, or the period of 2025 when that information was available. Opp'n at 31. This argument misses the point. Plaintiffs are asking the Court to infer that the Schwab Funds' performance was so poor that no prudent fiduciary would have offered those investments at any time between 2018 and the present. *E.g.*, Compl. ¶ 137 ("The Schwab Funds should never have been selected for the Plan and certainly should not have been permitted to languish in the Plan for years with no action taken by the Plan fiduciaries."). The Court should not infer a flawed investment monitoring process based on allegations that omit performance for much of the relevant period.

## II.    The Court Should Strike Plaintiffs' Prohibited Transaction Claim.

Plaintiffs do not dispute that their prohibited transaction claim exceeds the scope of the Court's order granting leave to amend. Plaintiffs' justification for adding this claim is that *Cunningham v. Cornell Univ.*, 604 U.S. 693 (2025), purportedly changed the law. Opp'n at 34. But *Cunningham* held only that certain exemptions to ERISA's prohibited transaction provisions are affirmative defenses that could not be resolved at the pleadings stage. *Id.* at 701-02. *Cunningham* did not

14

create a new cause of action and certainly is not justification for Plaintiffs' disregard of this Court's order. Plaintiffs could always have pleaded a prohibited transaction claim; they simply chose not to.

Plaintiffs also argue that Defendants are not prejudiced by this new claim, Opp'n at 35, but identify no authority suggesting that prejudice is a relevant factor in striking an amended pleading that exceeds the scope of a permitted amendment.[9] *See id.* That is because it is not. *See N.J. Chinese Cmty. Ctr. v. McAleer*, 2025 WL 1564869, at *7-8 (D.N.J. June 3, 2025) (explaining that "[w]here an amended pleading exceeds the scope of the amendments that were previously allowed by a court, district courts in this Circuit either (1) dismiss the pleading in its entirety, or (2) strike the portions of the amended pleading that exceed the scope of the permitted amendments under Rule 12(f)" without discussing prejudice).

## CONCLUSION

Plaintiffs allege the fiduciary process was flawed because Defendants did not pick the best performing target date fund. That is not enough and the Court should dismiss the claim challenging the Schwab Funds. Plaintiffs' new prohibited transaction claim violates the Court's Order and should be dismissed as well.

---

[9] *Savor Health, LLC v. Day*, 2022 WL 1500782 (S.D.N.Y. May 12, 2022), does not help Plaintiffs. That court noted some courts strike new claims that exceed the scope of a permissible amendment but declined to take that step where it had not "imposed such a substantive limit on the scope of [plaintiff's] amendment." *Id.* at *1.

15

Dated: January 9, 2026

MORGAN, LEWIS & BOCKIUS LLP
/s/ *Jeremy P. Blumenfeld*
Jeremy P. Blumenfeld, Bar No. 01588-2000
MORGAN, LEWIS & BOCKIUS LLP
2222 Market Street
Philadelphia, PA 19103
Tel: (215) 963-5258
Fax: (215) 963-5001
jeremy.blumenfeld@morganlewis.com

Gina F. McGuire (pro hac vice)
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, NY 10178
Tel: (212) 309-6199
Fax: (212) 309-6001
gina.mcguire@morganlewis.com

Sean McMahan (pro hac vice)
MORGAN, LEWIS & BOCKIUS LLP
1717 Main Street, Suite 3200
Dallas, TX 75201
Tel: (214) 466-4102
Fax: (214) 455-4001
sean.mcmahan@morganlewis.com

*Attorneys for Defendants*

16

## CERTIFICATE OF SERVICE

I certify that on January 9, 2026, a copy of the foregoing document and all exhibits/attachments thereto were filed electronically and notice of this filing will be sent by e-mail to all parties by the court's electronic CM/ECF filing system.

/s/ Jeremy P. Blumenfeld
Jeremy P. Blumenfeld